UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NORTHWEST ROOFERS AND EMPLOYERS HEALTH AND SECURITY TRUST FUND; NATIONAL ROOFING INDUSTRY PENSION PLAN; SPOKANE AREA ROOFERS JOINT APPRENTICESHIP AND TRAINING TRUST FUND; and ROOFERS AND WATERPROOFERS RESEARCH AND EDUCATION JOINT TRUST FUND,<br><br>    Plaintiffs,<br><br>    v.<br><br>SPOKANE COMMERCIAL ROOFING, INC. a Washington corporation,<br><br>    Defendant. | NO. 2:14-cv-00365-SAB<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMMENT, IN PART |

Before the Court is Plaintiff Trust Funds' Motion for Summary Judgment, ECF No. 14. The motion was heard without oral argument. Plaintiffs are represented by Jeffrey Maxwell and Robert Bohrer. Defendant is represented by Michael Church and Melody Farance.

This case is governed by section 301 of the Labor Management Relations Act (LMRA), and section 515 of the Employment Retirement Income Security Act (ERISA). Section 301 is a jurisdictional statute, under which "[s]uits for violation for contracts between an employer and a labor organization representing

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMMENT, IN PART ~ 1

employees in an industry affecting commerce" are permitted. 29 U.S.C. § 185. Soon after passage of the LMRA, the U.S. Supreme Court ruled that § 301 authorized the federal courts to develop a federal common law of Collective Bargaining Agreement interpretation. *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451 (1957). As a result, federal common law preempts the use of state contract law in Collective Bargaining Agreement interpretation and enforcement. *Local 174, Teamsters of Am. V. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962); *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001).

Section 515 is codified at 29 U.S.C. § 1145, which provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

## MOTION STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 324; *Anderson*, 477 U.S. at 250.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMMENT, IN PART ~ 2

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## BACKGROUND FACTS

On July 1, 2009, Defendant Spokane Commercial Roofing and United Union of Roofers, Waterproofers, & Allied Workers, Local No. 189 (the "Union"), entered into a one-year Master Labor Agreement that ended June 30, 2010.

On July 1, 2010, Defendant and the Union entered into a second one-year Master Labor Agreement that ended June 30, 2011.

Defendant terminated its Master Labor Agreement with the Union in June, 2011. As a result of the termination, Carol Steiner Olsen conducted an exit audit. She completed her audit on July 13, 2011. She found that Defendant owed the Trust Funds $29,752.45, consisting of $24,528.40 in under reported/unpaid fringe benefit contributions, $2,452.85 in liquidated damages, and $1,482.14 in interest to the date of the audit. In addition, the auditor assessed $1,289.06 in audit fees.

In October, 2013, Plaintiffs sent a demand letter seeking payment of $22,654.84, based on the audit of Defendant's payroll records from May 2010 through June 2011. Defendant did not pay the requested amount, and Plaintiffs filed suit on November 14, 2014, requesting $24,528.40 in underreported/unpaid

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMMENT, IN PART ~ 3

fringe benefit contributions; $2,452.85 in liquidated damages; $1,492.14 in interest to the date of the audit, and $1,289.06. In addition, Plaintiffs sought prejudgment interest from the date of the exit audit report to present, as well as for any additional amounts found owing.

## THE MASTER LABOR AGREEMENT

The following pertinent provisions are contained in the Master Labor Agreement in question:

The **PREAMBLE**, in SECTION 4 states:

> SECTION 4. This is a collective bargaining agreement between certain individual members of the Inland Empire Roofing Contractors Association (referred to as the Employer), and the United Union of Roofers, Waterproofers and Allied Workers Local No. 189 (referred to as the Union), and shall constitute an agreement to establish specific rules and regulations to govern wage scales and working conditions of Journeyman Roofers, Waterproofers, Registered Apprentices, Working Foremen, and Employees engaged in the application and installation of material described in Article III.

**Article VII** of the Agreement covers the Pension Fund.

> SECTION 1.  The National Roofing Industry Pension Fund was created pursuant to the terms of a certain Agreement and Declaration of Trust dated July 7, 1996, as thereafter amended.
>
> SECTION 2. Effective the 1st day of July, 2009 [2010], the Employer shall make the appropriate contribution for each hour for which the Employer is obligated to pay compensation to an employee covered by this collective bargaining agreement to the National Roofing Industry Pension Fund. Such hourly contributions shall be paid commencing with the first hour of employment by the employer, payable on or before the 10th day of the following month subject to the above mentioned schedule.
>
> ***
>
> SECTION 5. All payments to the Trust Fund shall be due on or before the 10th day of the month next following the month of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMMENT, IN PART ~ 4

employment for which contributions are due. Liquidated damages in the sum of ten percent (10%) shall automatically be due and payable on the 15th day of that month, together with interest at the rate provided by statute on judgments in the State where the delinquency occurs.

SECITON 6 … If the Employer is found to be delinquent through a regular or special audit ordered by the Trustees, the Employer shall be charged the full cost of such audit.… The Trustees are hereby given the power and authority to institute whatever legal proceedings are necessary to enforced compliance with the provision of this Article. Legal fees incurred by the Trustees in enforcing compliance with this Article shall be charged to the delinquent Employer.

SECTION 7.  The contributions required by this Article shall accrue with respect to all hours worked by any working foreman, journeyman, or apprentice represented by the Union or for any person doing work within the jurisdiction of the Union and said contributions shall accrue with respect to all hours worked by employees covered by the terms of the Agreement within or outside the geographical jurisdiction of the Union, except that when work is performed outside the union's jurisdiction where another fringe benefit fund of a similar kind exists and the Employer makes a contribution to that fund, the said Employer shall not be required to make a contribution to this fund.

**ARTICLE XII** provides the definitions of (1) Roofing Contractor; (2) Working Foreman; (3) Journeyman; (4) Apprentice; (5) Crew; and (6) Irritable Bituminous Roofer.

**Section 8** of this Article provides: Only one member of the Employer firm shall be permitted to work with the tools, regardless of the number of projects being undertaken. Section 9 states that one Journeyman of the collective bargaining union shall be classified as working foreman on each crew.

**ARTICLE IV**, Union Security, states as follows:

SECTION 1.  Pursuant to and in conformance with Section 8(a) and Section 8(b) 5 of the Labor Management Relations Action of 1947, it

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMMENT, IN PART ~ 5

is agreed that all employees coming under the terms of this Agreement shall make application to join the Union within eight (8) days following the date of employment or within eight (8) days following the date of signing of this Agreement, whichever is the later, and as a condition of continued employment, must maintain membership in good standing for the life of this Agreement and any renewal thereof.

SECTION 2.  In the event a regular member of a crew does not report for work on a regularly scheduled shift, the Employer shall be permitted to hire a temporary replacement, and that individual shall be allowed to finish that job without having to join the Union, job length limited to seven (7) days.

## THE PARTIES' ARGUMENTS

Plaintiffs are seeking summary judgment as a matter of law with respect to the following employees: (1) Douglas Olinger; (2) William Williams; (3) Allen Battle; (4) Brenton Peterson; (5) Christopher Stebbins; (6) Kent Tollefsen; and (7) David Olinger.

Defendant asserts that questions of material fact exist which precludes summary judgment. Specifically, Defendant makes the following arguments: (1) Plaintiffs are relying on inadmissible evidence to prove the amounts owing; (2) Questions of fact exist regarding Brenton Peterson and Christopher Stebbins and whether they were temporary replacements; (3)  Questions of fact exist regarding Kent Tollefson and whether he only weeded and raked the shop yard (4) Questions of fact exist regarding David Ollinger and whether Defendants properly selected him as the one employee to perform bargaining unit work without having to pay contributions on his work, as permitted by the Master Labor Agreement, Article XII, Section 8; (5) The amount of requested damages of $24,528.50 is inconsistent with the amount set forth in Plaintiff's original demand and (6) Questions of fact remain regarding Defendant's affirmative defense of laches.

//

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMMENT, IN PART ~ 6

## ANALYSIS

### 1. Admissibility of Payroll Audit Report

Based on the Declaration of Carol Steiner Olsen, ECF No. 25, the Court finds that the personal knowledge prong required by the Federal Rules of Evidence has been met. As such, the Payroll Audit Report, as well as the spreadsheets created by Jodi Weaver, can be considered by the Court.

### 2. Douglas Olinger, William Williams, and Allen Battle

Defendant has not challenged or presented any argument with respect to Douglas Olinger, William Williams, and Allen Battle. Accordingly, the Court grants Plaintiffs' Motion for Summary Judgment with respect to these employees.

### 3. Brenton Peterson and Christopher Stebbins

It is undisputed that Brenton Peterson and Christopher Stebbins were temporary employees, and not union members.

Defendant maintains that because the Master Agreement requires employees to join the union after 8 days of working, and these individuals never joined the union, they are not employees covered by this agreement. Defendant also argues that the Master Agreement distinguishes employees from temporary replacements, because Working Foremen and Journeymen are defined as employees, whereas a temporary replacement is referred to as an "individual."

Defendant reads the Agreement to only apply to "Journeyman Roofers, Waterproofers, Registered Apprentices, Working Foremen, and Employees engaged in the application and installation of material described in Article III of the Agreement." This statement is contained in Section 4 of the Preamble. Because temporary replacements are referred to as an "individual" in Article IV, UNION SECURITY, Defendant asserts that temporary replacements are not employees covered by the Agreement.

Defendant's reading of the Master Labor Agreement does not comport with general contract interpretation principles. Under federal common law, this court

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMMENT, IN PART ~ 7

looks to "general principles for interpreting contracts. *Klamath Water Users Prot. Assoc. v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). The Court examines the terms of the contract as a whole, giving them their ordinary meaning.

Defendant's argument ignores the other provisions of the Agreement, specifically, those provisions that provide for the payment of the funds. Article VII, Section 2, states that "the Employer shall make the appropriate contribution for each hour for which the Employer is obligated to pay compensation to an employee covered by this collective bargaining agreement to the National Roofing Industry Pension Fund." Section 7 states, "[t]he contributions required by this Article shall accrue with respect to all hours worked by any working foreman, journeyman, or apprentice represented by the union or *for any person doing work within the jurisdiction of the Union and said contributions shall accrue with respect to all hours worked by employees covered by the terms of the Agreement* ..." (emphasis added).

The fact that the Agreement contemplates and permits temporary replacements indicates that temporary replacements are employees covered by the collective bargaining agreement. Defendant cannot credibly argue that temporary replacements are not covered by the terms of the agreement, when the Agreement has provisions that specifically address "temporary replacement."

Additionally, in support of their motion, Plaintiff submitted the Declaration of Gregg Giles, who is an Administrator with Welfare & Pension Administration Service, Inc (WPAS). WPAS provides administrative services to employer's trust funds. As part of his duties, he is familiar with the Master Labor Agreement at issue in this case. In his Declaration, he specifically stated:

> Fringe benefit contributions are collected for all employees performing covered work for a sponsoring employer under the Master Labor Agreement, regardless of union status. Fringe benefit contributions are also collected for all employees performing covered work, whether they are full-time, part-time, temporary, or

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMMENT, IN PART ~ 8

subcontractors.

ECF No. 16.

Defendant has not provided any evidence to challenge Mr. Giles' statements, other than to rely on its arguments interpreting the Master Labor Agreement.

Accordingly, the Court grants Plaintiffs' Motion for Summary Judgment with respect to employees Brenton Peterson and Christopher Stebbins.

4. **Kent Tollefsen and David Olinger**

Questions of fact exist regarding whether Kent Tollefsen and David Olinger performed work covered by the Master Labor Agreement.

5. **Laches Defense**

Defendant argues that questions of fact exist regarding whether it can prevail on its affirmative defense of laches.

In § 301 actions under the LMRA, the statute of limitations is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations. *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW), AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704-05 (1966). The statute of limitations for breach of contract in Washington is 6 years. In ERISA actions, the Ninth Circuit has held that trust funds in Washington state have a six-year statute of limitations to bring an enforcement action to collect delinquent fringe benefit contributions. *Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450*, 827 F.2d 1324, 1328 (9th Cir. 1987).

Where the Court looks to state law for the statute of limitations, it also looks to state tolling laws as well. *Board of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1961). Laches is an equitable remedy that applies when a party: (1) had knowledge of facts constituting a cause of action or a reasonable opportunity to discover these facts; (2) there was an unreasonable delay in

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMMENT, IN PART ~ 9

commencing the action; and (3) the delay caused damage to the other party. *In re Anderson*, 134 Wash. App. 111, 118 (2006). In ordinary circumstances, the doctrine of laches should not be employed to bar an action short of the applicable statute of limitations. *Auve v. Wenzlaff,* 162 Wash. 368, 374 (1931). A court is generally precluded, absent highly unusual circumstances, from imposing a shorter period under the doctrine of laches than that of the relevant statute of limitations. *Brost v. L.A.N.D., Inc.*, 37 Wash. App. 372, 375 (1984). The purpose of the doctrine of laches is to prevent injustice and hardship. *Id.*

Here, Defendant's assertion that it has been prejudiced by Plaintiffs' delay in making their demand is not well-taken. At the minimum, Defendant knew or should have known about the six-year statute of limitations for claims under section 301 and section 515. Defendant has not shown that Plaintiffs' two-year delay in issuing its demand letter was unreasonable. No reasonable trier of fact would find that Defendant could meet its burden of proving the defense of laches.

**6.    Conclusion**

No questions of material fact exist and Plaintiffs are entitled to judgment as a matter of law with respect to the claims for reimbursement for fringe benefits for employees Douglas R. Olinger; William C. Williams; Allen Battle; Brenton Peterson; and Christopher Stebbins. Questions of material fact exist for employees Kent Tollefsen and David Olinger. No questions of material fact exist regarding whether Defendant can rely on the affirmative defense of laches. No reasonable trier of fact would conclude that a two-year delay was unreasonable, or that the six-year statute of limitations failed to put Defendant on notice that it should keep its employment records for more than two years.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Summary Judgment, ECF No. 14 is **GRANTED,** in part.

///

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMMENT, IN PART ~ 10

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 28th day of December, 2015.



Stanley A. Bastian
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMMENT, IN PART ~ 11